Mr. Hall. May it please the court. Thank you for the record. Mark Hall representing Andre Briscoe. I'd like to begin by discussing the first issue raised in the brief filed in this case by the appellant, and that's the question of the statute of limitations. In this case, the procedure was the government filed an information, and then several, about six weeks later, proceeded to an indictment. The reason that that is at issue in this case, and the reason that unusual procedure came about was due to the fact that we were in the midst of However, I would suggest to the court that under Federal Rule of Criminal Procedure 7, a information is only permissible in two instances, either a misdemeanor, which is a crime punishable by less than one year, or if it is a crime more than one year, it's one in which the defendant has waived the indictment. In practicality, what I generally find in practicing in the U.S. District Court. Yes, Your Honor. What latitude do we have to go into the circumstances surrounding the filing of the information? The statute could be read to say that the filing of the information institutes a tolling of the statute of limitations, and it would seem to be a fairly cut-and-dried rule, which I'm not sure we have the latitude to write in our exceptions to it. Well, I would suggest to the court that it is a rule that I did speak in my brief somewhat as to the purpose of the statute of limitations, and also the circumstances of the filing of the information in this case. I would say to the court that it's the appellant's position that the rule is the rule, and that had Congress decided when they passed the CARES Act, which allowed for some latitude with court proceedings such as doing some proceedings by video, had they wished to, as part of the CARES Act, made some provision involving grand juries, they could have, but they didn't. So my suggestion to the court is, as I said, that the rule is the rule, and that the purpose of an information is not to serve just as a placeholder. You're asking us to create a conflict with the Seventh Circuit. The Seventh Circuit, as I read the opinion, seemed to say that it's simply the filing of the information that institutes the tolling provision, and it doesn't matter whether the defendant is waived an indictment, and it doesn't matter whether there's an effective process, whether the prosecution by the information may or may not go forward. Um, that what we're looking at here in terms of tolling is whether the information was filed, in which case tolling takes place, or the information is not filed, in which case there's no tolling. And I'm just not certain why that, at least as I read it, why that Seventh Circuit wasn't persuasive. Well, I would suggest to the court, while I certainly understand the Seventh Circuit's opinion in this case, I believe that it allows the government a greater latitude than the rules were intended to provide, and that in this particular case, if we're not dealing with a waiver. It seemed to me that the part of the purpose of the statute was to have something of a cut and dried rule so that this preliminary issue of the statute of limitations could be fairly easily resolved, and the purpose of the statute of limitations is not to ask questions, but simply to ask whether the information was filed. And the limitations issue is preliminary to the trial itself, which in this case was a 12-day jury trial. And normally, preliminary issues of this kind are often resolved best, and Congress is entitled to take this into account, by the rule that is clear-cut in its application. Well, I would suggest to the court the argument to the contrary is that the rule as in Rule 7 of criminal procedure is cut and dried, and that what the government was doing here was did. And therefore, with all due respect to the Seventh Circuit, I disagree that that was the right way. Well, it's important to take your side of it, because in the government's brief on pages 20 and 21, it seems to indicate that the courts that have considered this are in agreement with Seventh Circuit. I understand that, Your Honor, and I'm suggesting again that what the government did here was to try to... Are there any courts that have taken your side of this? I do not believe so. I believe that this, because I think most of the cases involving this issue have come about because of the disruption of the COVID period that, in general, is not an issue that has come before the appellate courts very often. There's no evidence. I mean, you haven't raised the question of the government's good faith in filing it. I mean, there weren't any shenanigans that the government was engaged in. No, Your Honor, I haven't accused the government of any shenanigans, as the court put it in this case. What I've said is that I think they, as with all due respect to my colleagues on the other side, they're very good lawyers and did what they could with the situation. I'm just saying that we disagree that that was an appropriate use of the procedure for filing an information, which was to liken it to a football game as to throw a pass out of bounds just so you can stop the clock. The government on pages 20 to 21 lists nine opinions that agree with them, and just based on the dates of those, only three of the nine appear to have been during the COVID period, so there are a number that reason against you for other reasons. Yes, but I... The majority. Yes, I agree. I'm simply saying that I believe that the ones that are most relevant are the ones that have the COVID element as part of it. Now, I did raise other issues in my brief, if I may just proceed to the question of the search in this case. As the court will recall, my client, Mr. Briscoe, was found through the use of what is called a stingray device. I know the court is very familiar with how that works, and that the Supreme Court has subsequently discussed stingray devices in Carpenter v. U.S. And in that case, the court said they needed a warrant. I think what the government has said in their response... The issue here seems to be the entry into the apartment 202 and whether there was consent. Yes. And the district court held a hearing on the question of the consent, and we'd have to find its ultimate conclusion as to the entry into the apartment 202 to be clearly erroneous. That's a factual finding. Yes, I believe that that is the statement. Why is it clearly erroneous for the district court to find consent? Well, it goes, I think, then to the question of Mr. Briscoe's standing. And I believe that what Judge Bennett was saying in his written opinion on this issue was that Mr. Briscoe did not have standing, and I suggested to the court that he did have standing to object. And it's not just the question of the entry, but also the question of the seizure of Mr. Briscoe, who was inside, and most importantly, his cell phone, which... Which seizure are you talking about? After the entry into 202, Mr. Briscoe was arrested or certainly detained at that time. I don't know if it was an official arrest at that moment, but he had a cell phone, and the cell phone was, I believe... He was arrested after they found the presence of a good many narcotics in the apartment. Yes, yes. So I think that would be the official arrest. That would not be a lawful, probable cause arrest, especially if Mr. Briscoe had not had standing to object to the recovery of the narcotics. But, I mean, it seemed to me that there would be, after the recovery of the narcotics and the like, there would be an arrest for probable cause. You know, if you have a good legal reason for you know, I'm certainly willing to hear and respect that, but I am troubled by the fact that at day's end, you're asking us to overturn a 12-day jury trial. And where Mr. Briscoe was convicted of conspiring with Hanes, not only to kill Jennifer Jeffrey, but to murder her son, KB, so that this little child could not serve as a witness. And that's probably why there are three capital counts. But if you've got a strong legal argument, I'm certainly willing to entertain it, but what you're asking is really a tall order, given the 12 days that the trial. I understand that, Your Honor. I'm very grateful to you for taking this kind of case, because everybody deserves representation, to be sure. But you'd have to have a pretty good argument, my friend, to persuade me. I understand that, Your Honor. And first of all, let me say that nothing that I do in either a trial case or appellate case is meant to... It's interesting to me, because your argument on the statutes of limitation and the suppression of the evidence, which I think entirely entitled to make, and I think you have wisely selected arguments that do not go to the jury's finding or to the guilt or innocence of this individual. And so you're staying away from that as far as you can get. And I don't... Sir, I don't blame you for one second. I appreciate that. You wouldn't blame me for saying that these are pretty darn unsavory facts. I understand that, Your Honor. And while I recognize my time is gone, but if I could just answer the court's question and then I'll take it out of my rebuttal time if need be. But I would suggest to the court that, first of all, nothing that I do is ever meant to in any way repeating or lessen the tragedy of what occurred in this case. However, I do believe as appellate counsel, defense counsel, that I have a duty to try to make sure that the government plays by the rules and that in this particular case, I would suggest to the court that both the initial entry into this apartment are problematic for the government and that's why we raise them. Thank you, Your Honor. Mr. Todd, we'd be pleased to hear your side of it. Thank you, Your Honors. Good morning. May it please the court, Spencer Todd for the United States, joined at council's table by my colleague, Paul Budlow. In May 2015, Andre Briscoe murdered a seven-year-old boy and his mother. When the government was ready to indict, it was unable to do so because grand jury proceedings had been suspended in the District of Maryland. So, the government charged Mr. Briscoe by information within the limitations period. The district court correctly held that the information charging counts two and three was timely, quote, instituted under 18 U.S. Code section 3282A because it was filed within the limitations period. The text of section 3282A and the purpose of the statute of limitations both confirmed that the district court was correct. Now, I want to start by noting that my friend on the other side said that the rule is the rule and he's referring to Rule 7B. Rule 7B is a claim processing rule that enshrines the Fifth Amendment right to the relevant statute of limitations and the one that we have to look at for purposes of textual analysis is section 3282A, not Rule 7B. Under the plain text of that statute, an information is timely instituted when it is filed as the Seventh and Tenth Circuits and a raft of lower courts have agreed. And just to look at the plain meaning of the word instituted, it means to begin or to... And you have to have the indictment relate back to when the information was instituted for the statute of limitations to be met here, right? That's correct, Your Honor. And how is it, what's required for an indictment to relate back to the information date? Yes, Your Honor. I believe the precise language from the court, and this is from United States v. Ojedokin, 16 F. 4th, 1091, a strong chain of continuity that links the earlier and later charges. And so the indictment, which was returned by the very first grand jury to resume sitting in the District of Maryland, charged essentially identical charges as were lodged in the information. And just to return briefly to the text of section 3282, again, it says that the information must be instituted. The object of the verb instituted is the information itself. And as a legal pleading, the information comes into existence when it is filed with the point. And it's important to know that whether or not an individual will waive down the line, an information has inherent legal power the moment it is filed. That is the moment at which the court assumes jurisdiction. That is the moment at which charges are announced. And it triggers a preliminary hearing under Rule 5.1, which ensures that the defendant will have timely notice. And I think as a textual matter, it makes sense to interpret Section 3282A differently from Rule 7b, and here's why. Again, the relevant verb in 3282 is institute. The relevant verb in Rule 7 is to prosecute, meaning an individual cannot be prosecuted on a waiverless information, meaning they cannot plead guilty or be tried. The plain meaning of the word institute, as I say, to begin, start, or commence. The plain meaning, borrowing from Black's Law Dictionary of the verb prosecute, means, quote, to institute and pursue a criminal proceeding against a person. So plainly, the verb institute, as used in Section 3282A, means something less than the verb prosecute, ruled in 7b. And there's no reason to import the prosecution element of Rule 7b into a statute of limitations. We'd be setting up a circuit conflict in conflict with a whole lot of other courts if we ruled the other way, would we not? That's correct, Your Honor. It would create a square conflict with the Seventh Circuit in Burdick-Steina, and I think it would also create a conflict. And normally, the way you're talking about federal law and federal prosecutions is a value in having some uniformity. Correct, Your Honor. And I think it would also create a conflict with at least the Tenth Circuit's reasoning in Cooper. There, the facts were slightly different, and information was actually filed after the statute of limitations, and in that case, the Tenth Circuit said it would have been timely if it was filed within the statute of limitations, regardless, again, of waiver. And I think this makes sense if we step back and look at the purpose of the statute of limitations. The purpose is twofold. First, it's to provide timely notice of the allegations against a defendant, and second, it encourages law enforcement to resolve cases promptly. And both of those interests are served by stopping the statute of limitations clock when the information is filed, because that initiates the case. As I say, it confers subject matter jurisdiction on the court, and it triggers a preliminary hearing at which a defendant will have the opportunity to contest probable cause and indeed cross-examine the government's witnesses. And it also ensures that the government resolves cases promptly, because the information has to set forth any alleged criminal violation with the same specificity as an indictment. Rule 7b, as they say, is a claim processing that merely ensures compliance with the Fifth Amendment. And the Fifth Amendment is ultimately concerned with the case's ultimate conclusion, not the start of a case. It protects against the possibility of a guilty plea or a guilty verdict until a grand jury has concluded that the charges against an individual are well founded. As I say, that goes to the ultimate conclusion of a case. The statute of limitations is concerned with the start of a case. And I think the following might illustrate the problems with Mr. Briscoe's position. I mean, if you consider that a natural disaster makes it impossible for the grand jury to convene. So the government files an information that announces the charges. The defendant has an initial appearance. There's a case on PACER. The defendant can go and read the charges against him. He has an initial appearance where a magistrate advises him the charges against him. There's a preliminary hearing at which his guilty of an arraignment and indeed moves to dismiss the indictment. Under Mr. Briscoe's rule, the statute of limitations is running the whole time, even though the case is, in fact, being litigated. And that simply doesn't make sense from the perspective of the statute of limitations purpose. Now, Judge Thacker, you were previously asking Mr. Hall about sort of some of the cases, and I think you asked if there were any that have gone against the government's position. Now, I do want to flag one, but I think I want to highlight the reasoning there to show why Mr. Briscoe's position is erroneous. And that case was United States v. Machado. It was a district court case from 2006 from the District of Massachusetts, which we acknowledge in our brief. And there, the district court's reasoning was that a waiverless information is a legal nullity because it doesn't even confer subject matter jurisdiction on the court. And that is just an that a waiverless information confers subject matter jurisdiction on the court. And that's because every information, when it comes into existence, is waiverless. A defendant cannot waive or Rule 7b until after they have been advised of the charges against them and their rights and waive an open court. And it must be the case that a court has jurisdiction to first advise the defendant and accept his waiver. So Machado does go against the government's position, Your Honors, but it was founded on a very critical legal error in the court's analysis, and we think should not be followed. And indeed, the vast majority or virtually every other court that the government is aware of has not. Can I ask you a question about the consent to enter apartment 202. Was the occupant, was the person who admitted law enforcement into that apartment, were they the owner, either an owner or lessee of the apartment? It was a resident of the apartment, as the district court found. And just to speak briefly to the suppression issues, which I know there was some discussion of, I just want to take a step back and stress that if there were any of the suppression motions that are raised, any error would be harmless in this case because very little evidence is in fact impacted by the suppression issues that Mr. Briscoe raises. If Mr. Briscoe is right about all the suppression arguments that he makes in his brief, all that that means is that his June 5, 2015 arrest was improper. And the evidence that would be affected by that, the phone that was found on Mr. Briscoe's person, and none of the contents of that phone were introduced at trial. And in fact, the government independently proved that the phone with that number was described in Mr. Briscoe's name. So the phone was not relevant. And second, there were certain statements that Mr. Briscoe made post-arrest. Those statements were essentially false exculpatory statements. Now the weight of the- But you're saying if he's correct about, if he is correct about his suppression issues, what about the guns and the drugs? Wouldn't they be suppressed? I think yes. If you're into the stuff, the contraband that was seized from the apartment 202, those would be suppressed. But I think ultimately, again, it would be harmless error. I mean, the great weight of the government's case here was built on, among other things, witness testimony in which witnesses, including Mr. Briscoe's uncle, his cousin, other cousins, Kiara Haynes, who was his co-conspirator, all stated, you know, Mr. Briscoe made, you know, ask them to sell, ask them if they were interested in purchasing heroin. Mr. Briscoe's uncle testified that he purchased heroin from Mr. Briscoe. His cousin testified that Mr. Briscoe asked him if he wanted to sell heroin. So there was extensive witness testimony establishing the drug and firearm conduct, including, as we say, testimony from Kiara Haynes, who was Mr. Briscoe's co-conspirator in this case. And those are the witnesses that Mr. Briscoe is arguing the government provided false testimony by presenting those witnesses, correct? I'd like you to have an opportunity to respond to that. Yes, Your Honor. My understanding of Mr. Briscoe's argument on that point specifically revolves around Kiara Haynes, who was one of the, who was a co-conspirator in this case. His theory seems to be that because she made certain false statements at grand jury, it's necessarily the case that she must have lied at trial. First, Your Honor, we would note that this was not raised below, so the standard would be plain error. And I don't believe Mr. Briscoe addresses that burden, so his argument fails on that basis alone. And indeed, this is exactly the kind of case where the plain error burden is so important because it's fundamentally a factual question if false testimony was given. So it's not an apt question to raise for the first time before a court of appeals. In any event, Mr. Briscoe has the burden. He's saying that his argument is that the government knowingly used testimony. That's what I'd like to give you the opportunity to respond to. Yes, Your Honor. Certainly, that would be, you know, serious if there was any truth to it. But Mr. Briscoe doesn't identify any testimony at trial that he contends was false at all. His view seems to be that the jury should not have believed Ms. Haynes because she admitted to making false statements to investigators at prior points in the case. As cooperators in, I'm sure, the large share of And I assume defense counsel cross-examined the witnesses on their questionable credibility and also argued before the jury that these witnesses are not credible. They certainly did that very ably, Your Honor. And certainly, there's no inference, even if Mr. Briscoe could point to some testimony that was false, there's no inference that the government knowingly suborned that kind false statement. Of course, you worry about the situation that every time, I mean, every time the jury disbelieves a certain witness, you can't make, it takes a lot to make the jump from the fact that a jury didn't believe someone to the fact that some sort of perjured testimony was put on. I mean, there can be differences of belief and questions of credibility within the context of a jury trial and within the context of a single witness. It doesn't mean somebody put on perjured testimony. Absolutely, Your Honor. Otherwise, I think there could be an inference wherever one side loses that they've essentially suborned perjured testimony. Just to briefly return to the timeliness issue, because I just want to clarify one procedural point that we made in our briefs. You know, even if the court were entirely unpersuaded by our arguments here this morning, there are only two counts that are affected by the timeliness argument, and that's counts two and three. Is the Brady issue up here on plain error? Brady issue is also on plain error, Your Honor. And again, I don't believe that burden is addressed. Would the defendant have had enough in his possession to object? Because a lot of things get up here on plain error when a defendant doesn't have the information at hand to lodge an objection at the time. I think so, Your Honor. But it's a little bit difficult to say because these circumstances don't really fit into the Brady framework. So Mr. Briscoe's theory is that the government failed to preserve a security camera, which he theorized might have contained exculpatory evidence. And I think there's a factual issue with that, and there's a legal issue with that theory. The factual issue is that, first, officers testified that the camera was seized, and it was examined, and it was not working. There was no testimony to contradict that. Let me ask you this. It was all kinds of evidence that he murdered. Mr. Briscoe murdered the mother here. He made numerous incriminatory statements, and he admitted to killing Ms. Jeffries. Do you have the same compelling evidence with respect to the child? Yes, Your Honor. Many of the statements that Mr. Briscoe made to others implicating himself— It's the statements of Mr. Briscoe. It seems to me you have powerful evidence supporting the murder of the mother. You're saying that most of those incriminatory statements encompass the murder of the small child as well? Yes, Your Honor, but it's not just the witness testimony. There was also forensic evidence which confirmed that historical cell site location information. You have witness evidence and physical evidence? Yes, Your Honor. There was information putting Mr. Briscoe's cell phone at Ms. Jeffries' residence at the time that both Ms. Jeffries and her son were killed. The motive for killing the child was to do away with the witness? Yes, Your Honor. Your Honor, I realize there are certain other issues that Mr. Briscoe raises. If there are no further questions from the Court, I'll waive the balance of my time. Roy, do you have anything? No, sir, I don't have anything. All right. Thank you. Mr. Hall, I'm pleased to hear from you in rebuttal, sir. Thank you, Your Honor. Just a couple of points that I wanted to make in response to the government's presentation. First of all, the subject matter of conflict of the circuit came up during the discussion of the issue involving the use of an information, and I certainly understand that the circuits don't necessarily seek out conflicts. However, it is true that each circuit has the ability to decide a particular issue as it sees fit, and that there is certainly another court, the Supreme Court, that sometimes has to decide when there is a conflict between the circuits. So I don't know that that necessarily is persuasive. Maybe the arguments in the opinion are persuasive to the Court, but the mere fact that there could be a conflict should not be a reason to affirm the conviction on that particular issue. The second point I wanted to raise in regard to the issue involving the use of an information in this case, the government, in discussing it, was asked and affirmed that there was a strong chain of continuity involved between the information and what ultimately went to trial before the jury. And I would suggest to the Court that on the question of continuity is the fact that the information was filed only in regard to the drug charges, not in regard to the murder charge. And as I think we all know from the series, it was the murder charges which ultimately were the issue here. That was what most of the trial was about, was the question of the murders. So I would suggest to the Court again that on that particular issue, one way that it could have been resolved so that the government could have done what it did was simply, during the COVID crisis, if the Court had decided, not the District Court, but the Court in a larger context, could have simply made an amendment to the statute. And I would suggest that this is a procedure that certainly was a clever thing to do on the part of the government, but it does not fall either within the rule, and I would suggest doesn't fall within 3282, the statute of limitations, because of the way the government went about it in this case. The government also states the issue, well suppose there was a natural disaster of some type that prevented the Court from sitting or the grand jury from sitting and returning the indictment in this case, and I suggest to the Court again that I certainly understand that in some ways the COVID pandemic was sort of a natural disaster in this country and many countries, but it doesn't provide a way to then go around the rule. And what we're asking the Court to do in this case is simply to enforce the rules so that everyone is playing on a level playing field and that regardless of the terrible circumstances of the case and the fact that it was somewhat of a long jury trial, the rules must be enforced. If the Court has no further questions, I'll cede my last 35 seconds back. I don't think we have any further questions, sir. Thank you. I see that you're Court appointed and I want again to express the appreciation of the Court for your taking on this case and doing the conscientious job that you did with it. Thank you so much. Thank you for your comments, Your Honor. And we will come down to recounsel and move into our final case.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Henry F. Floyd